## Reed v. Mercer County Fiscal Court.

(Decided June 21, 1927.)

### Appeal from Mercer Circuit Court.

1. Damages.—Ordinarily, measure of damages for permanent injury to real estate is difference between market value immediately before and after injury.

2.   Damages.—Where property destroyed has distinct value without reference to land on which it stands, recovery may be had for its reasonable value regardless of difference in value of land, except that damage may not exceed value of land with improvements.

3.   Damages.—Owner of stone fence which was torn down held entitled to recover value of fence in its condition at time it was destroyed, rather than difference in value of such fence and value of wire fence which replaced it as inclosure.

4.   Damages.—In computing damages to owner of stone fence at time it was destroyed, reasonable value thereof as proper measure of damages is to be ascertained by estimating the present cost of construction of a stone fence similar to the one destroyed and deducting from the amount of such estimate the depreciation which the old fence had suffered by reason of age and use.

E. H. GAITHER for appellant.

R. L. BLACK for appellee.

OPINION OF THE COURT BY JUDGE MCCANDLESS—Reversing.

J. S. Reed owned a farm in Mercer county on the Dry Branch turnpike. From the corner of his yard a stone fence 4½ feet high and constructed of flat stone with a coping ran eastwardly along the pike for a distance of 414 feet. Reed's predecessor in title had conveyed to Mercer county a perpetual lease for the purpose of quarrying stone in a strip of land 105 feet deep fronting on the pike and running the length of this fence. The deed contains the following provision:

"It is distinctly understood that neither party to this conveyance is compelled to fence said land, but the grantors have a right to do so, and so long as the grantors maintain the fence along the right of way of said turnpike, the grantees shall construct and maintain at points of entrance, good, strong gateways, and enter and leave said land through same."

In the year 1922, without excuse or provocation and over the protest of Reed's tenant, the county road engineer crushed the stone composing the fence for ballast, and in lieu thereof constructed a post and wire fence.

In a suit for damages for destruction of the fence, Reed testified that he was preparing to move upon the farm; that the stone fence was in good condition and was highly desirable as a screen to the quarry; that it was his

intention to cement the joints and extend the fence across the front of his yard; that it also served to prevent his land from washing; and that no other fence would serve his purpose. On the other hand, defendant's witnesses stated that the fence was in a dilapidated condition. The jury returned a verdict for $5.00 in favor of Reed. Not satisfied with the amount he appeals, asking a reversal on the sole ground of error in the instruction on the measure of damage. That instruction reads:

> "You will award to the plaintiff damages as will represent the difference in the value of the rock fence that was used and torn down and the value of the fence as rebuilt as an inclosure, and in estimating damages, if any, you may take into consideration the cost of the respective fences, not to exceed $600, the amount claimed in the petition."

Ordinarily the measure of damage for injury to real estate is the difference between the reasonable market value of the property immediately before and after the injury. But this measure is applied to permanent and not to temporary injuries. When the property destroyed has a distinct value without reference to the land upon which it stands, a recovery may be had for its reasonable value, and this is not controlled by the difference in the value of the land except the damage may not exceed the value of the land with the improvements upon it. The appellant, however, insists that he is entitled to have his fence restored to the condition it was in at the time of its destruction, or to recover the present cost of its replacement, and that the court erred in restricting his recovery to the difference in the value of the two fences as an inclosure. The rule as to restoration is thus stated in 17 C. J. 882:

> "Under some circumstances, the proper measure of damages may be the cost of restoring the property to its original condition, as where the injury is susceptible to remedy at a moderate expense and the cost of restoration may be shown with reasonable certainty. This is particularly true when the adoption of the difference in value as the measure of damages would be difficult and uncertain, or where the injury is not so much to the land itself as to the improvements thereon. Such a measure can-

not be adopted however, where the cost of restoring the property would exceed the value thereof, or the actual damage sustained by plaintiff or where restoration is impracticable. Further the recovery is limited to the cost of restoring the premises to their original condition and not to that of placing them in better condition than they were originally."

The text is fully borne out in our opinions and replacement or the value of the injured property has been allowed according to the facts thus: For the destruction of property by fire, C., N. O. & T. P. Ry. Co. v. Falconer, 97 S. W. 727, 30 Ky. Law Rep. 152; Illinois Cent. R. Co. v. Nuckols, 212 Ky. 564, 279 S. W. 964; Ky. T. & T. Co. v. Bain, 161 Ky. 44, 170 S. W. 499. For partial injury to buildings by rocks thrown in blasting, Lexington & Eastern Ry. Co. v. Baker, 156 Ky. 431, 161 S. W. 228; Adams & Sullivan v. Sengel, 177 Ky. 536, 197 S. W. 974, 7 A. L. R. 268. For similar damage to a spring, Cherry Bros. v. Christian County, 146 Ky. 330, 142 S. W. 726. For damage resulting from negligent drainage, Pickrell v. City of Louisville, 125 Ky. 213, 110 S. W. 873; Wallingford v. Maysville & Big Ry. Co., 107 S. W. 781, 32 Ky. Law Rep. 1049. For injury to an orchard by fire, Louisville & N. R. Co. v. Beeler, 126 Ky. 328, 103 S. W. 300, 31 Ky. Law Rep. 750, 11 L. R. A. (N. S.) 930, 128 Am. St. Rep. 291, 15 Ann. Cas. 913.

In the Falconer case it is said:

"Compensation is the bottom principle of the law of damages. To restore the party injured, as near as may be, to his former position, is the purpose of allowing a money equivalent of his property which has been taken, injured or destroyed. If the thing taken or destroyed can be replaced in the market, then obviously that sum of money which will buy another like it will repair the injury. So, if property is injured, but not destroyed, ordinarily the measure of damages, where the property can be repaired, so as to be as it was before, is that sum that will restore the former condition. If the injury is such that it cannot be repaired by bestowing something upon it, or adding it to the injured property, then the measure of damages would be the value of the property just before its injury and its market value after-

ward. The latter measure is adopted not as the ideal one, but as the surest of which the case is susceptible. If the houses burned and sued for in this suit added little or nothing to the market value of the land upon which they were situated, because perhaps there was no market at that place for a storehouse or tenement house of that class, it is nevertheless true that the owner was entitled to them uninjured by the negligence of anyone else; and her right is, as against anyone tortiously destroying them, to have her condition restored by giving her such sum in money as will replace the destroyed tenements."

In the Beeler case the court said:

"Ordinarily, where one person has negligently destroyed the property of another, he is required to compensate the person injured for the fair value of the property destroyed, and it does not lie in his mouth to say that 'in destroying your property, which represented a large investment, I did you a service, rather than an injury.' The owner of an estate is entitled to have his estate in such a condition as he wants it, and to keep upon it such things as he pleases. An aviary, a skating rink, a dancing pavillion, or the like, might in the judgment of the average person add very little to the value of an estate in land; and yet these things might represent a considerable investment of money."

It will thus be observed that the measure of damage varies according to the facts of the different cases, and that even with the above classification, it is sometimes difficult to adopt the true criterion. Of course the injured party may not make a profit out of the injury and is not entitled to have his property restored to its former condition if this is impracticable or cannot be done at a reasonable cost. On the other hand, he is entitled to the improvements he has made and to enjoy them according to his own wishes, even though they may be regarded by the public as fanciful and aesthetic rather than practical. A wrongdoer cannot destroy property and substitute another article of his own choosing in lieu thereof and require the owner to accept it, but upon such destruction should be required to replace the damaged article in the condition it was in before the injury, if this can be done

at reasonable cost and is practicable. In this instance the appellant was entitled to the enjoyment of the fence he had chosen. The county had no right to destroy it, nor could it compel him to accept a fence of its choosing. The cost of restoration can easily be calculated and it does not appear to be prohibitive. However, appellant is not entitled to a new fence nor can the old one be restored; hence he can only recover the value of the fence in its condition at the time of the injury. If considered merely as a means of inclosure the jury might reasonably conclude that for general utility a wire or plank fence would equal or surpass in value such a stone fence, and in reaching their verdict disregard all questions as to the special purpose or objects for which appellant maintained the fence and naturally find only nominal damages. To avoid confusion on this question, on another trial the court will omit all reference to the wire fence and substantially instruct the jury to find for the plaintiff the reasonable value of the stone fence at the time it was destroyed; this to be ascertained by estimating the present cost of construction of a stone fence similar to the one destroyed and deducting from the amount of such estimate the depreciation which the old fence had suffered by reason of age and use. The county will be permitted to remove the wire fence.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.